UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| REYNOLD T. JASSO,<br><br>　　　　　　　Petitioner,<br>　v.<br>LeGRAND, et al.,<br><br>　　　　　　　Respondents. | Case No. 3:11-cv-00827-MMD-VPC<br><br>ORDER |

Before the Court for a decision on the merits is an application for a writ of habeas corpus filed by Reynaldo T. Jasso, a Nevada prisoner. (Dkt. no. 6.)

I.　　**FACTUAL AND PROCEDURAL HISTORY**

In December 2007, the State of Nevada filed a criminal complaint in Henderson Justice Court, Clark County, Nevada, charging Jasso the following felonies: 25 counts of Lewdness with a Child Under the Age of 14, 13 counts of Sexual Assault with a Minor Under Sixteen Years of Age, one count of Battery with Intent to Commit Sexual Assault, two counts of Attempted Sexual Assault with a Minor Under Sixteen Years of Age, and one count of Use of Minor in Producing Pornography. In June of 2008, Jasso entered into a guilty plea agreement with the State, under the terms of which he would enter a guilty plea to one count of Lewdness with a Child Under the Age of 14 and both parties would recommend a sentence of ten years to life.

In September of 2008, Jasso filed a motion to withdraw the guilty plea, claiming that he did not understand the plea agreement. The motion was denied. Jasso received

a sentence of ten years to life, as well as lifetime supervision and mandatory registration as a sex offender within 48 hours of any release from custody. Jasso appealed.

On January 8, 2010, the Nevada Supreme Court affirmed the judgment of conviction. Jasso filed a petition for post-conviction relief in the state district court on October 25, 2010. On March 22, 2011, the state district court entered an order denying relief. The Nevada Supreme Court affirmed that decision on September 15, 2011.

On November 16, 2011, this Court received Jasso's petition for writ of habeas corpus. After receiving Jasso's filing fee, this Court ordered the petition filed on January 26, 2012. The respondents filed an answer to the petition on April 18, 2012. Jasso filed his reply on July 12, 2012.

## II.    STANDARDS OF REVIEW

This action is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

2

*Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 131 S.Ct.1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S.Ct. at 1398. In *Pinholster*, the Court reasoned that the "backward-looking language" present in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made," and, therefore, the record under review must be "limited to the record in existence at that same time, i.e., the record before the state court." *Id.*

For any habeas claim that has not been adjudicated on the merits by the state court, the federal court reviews the claim *de novo* without the deference usually accorded state courts under 28 U.S.C. § 2254(d)(1). *Chaker v. Crogan*, 428 F.3d 1215,

3

1221 (9th Cir. 2005); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). *See also James v. Schriro*, 659 F.3d 855, 876 (9th Cir. 2011) (noting that federal court review is *de novo* where a state court does not reach the merits, but instead denies relief based on a procedural bar later held inadequate to foreclose federal habeas review). In such instances, however, the provisions of 28 U.S.C. § 2254(e) still apply. *Pinholster*, 131 S.Ct at 1401 ("Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief."); *Pirtle*, 313 F.3d at 1167-68 (stating that state court findings of fact are presumed correct under § 2254(e)(1) even if legal review is *de novo*).

Lastly, the Court in *Lockyer* rejected a Ninth Circuit mandate for habeas courts to review habeas claims by conducting a *de novo* review prior to applying the "contrary to or unreasonable application of" limitations of 28 U.S.C. § 2254(d)(1). *Lockyer*, 538 U.S. at 71. In doing so, however, the Court did not preclude such an approach. "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) — whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.*

**III.  ANALYSIS OF CLAIMS**

    **A.  Ground One**

In Ground One, Jasso claims that his guilty plea was involuntary, in violation of his constitutional rights, because he was not informed that probation was available as a sentencing option for the offense to which he entered the plea. He further alleges that he was not informed of the need for, nor did he receive, a psychosexual evaluation or a presentence investigation report prior to sentencing. From 2000 until 2003 probation was a potential penalty for the crime for which Jasso was convicted, provided that a licensed psychologist certified that the offender was not a menace to the health, safety or morals of others if released. NRS § 201.230 (1999); NRS § 1776A.110 (2001). However, beginning in 2003, the Nevada legislature revised the possible penalties by eliminating probation as a sentencing option and adding a term of two to twenty years.

4

NRS § 201.230 (2003); NRS § 1776A.110 (2003) (omitting an offense under NRS § 201.230 from the list of sex crimes for which the court may grant probation under the section).

Jasso's Guilty Plea Agreement contained the following provision:

> I understand that as a consequence of my plea of guilty the Court must sentence me to a term of LIFE with the possibility of parole with parole eligibility beginning at ten (10) years or definite term of twenty (20) years with parole eligibility beginning at two (2) years.

(Dkt. no. 20-1 at 97-98.)[1] In addition, the agreement specifically provided that Jasso was not eligible for probation. (*Id.* at 98.) Thus, the agreement used the post-2003 version of the law with respect to the potential sentences the court could impose. Jasso argues that, because the time period the crime was alleged to have been committed ranged from January 1, 2000, to September 30, 2004, he should have been informed as to the possibility for probation if he met the certification requirements applicable prior to 2003.

A plea is voluntary if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). "[A] plea of guilty entered by one fully aware of the direct consequences . . . must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *Brady v. United States*, 397 U.S. 742, 755 (1970). In *Brady*, the Court stated:

> We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than to face a wider range of possibilities extending from conviction to acquittal, and a higher penalty authorized by law for the crime charged.

397 U.S. at 751.

---

[1] References to page numbers in the record are based on CM/ECF pagination.

5

In addressing this claim in Jasso's state post-conviction proceeding, the Nevada Supreme Court held that a "guilty plea is presumptively valid," "the petitioner carries the burden of establishing that the plea was not entered knowingly and intelligently," and the court "looks to the totality of the circumstances" to determine whether the plea is valid. (Dkt. no. 20-3 at 74 (citing Nevada case law).) In rejecting Jasso's claim, the court reasoned:

> Appellant was originally charged with forty-two counts. In exchange for a stipulated sentence of life in prison with the possibility of parole after ten years, the State agreed to only pursue one count of lewdness with a minor under the age of fourteen and dismiss the remaining forty-one counts. Because appellant stipulated to a specific sentence, appellant failed to demonstrate that knowing probation was a potential penalty would have influenced his decision to plead guilty. Therefore, the district court did not err in denying this claim.

(*Id.*) With respect to Jasso not being informed of a psychosexual evaluation or a presentence investigation report, the court concluded that these issues could not have affected the validity of the plea because they arose after the plea was entered. (*Id.* at 73.)

Although the Nevada Supreme Court did not cite specifically to federal law, the standards the court imposed were not "contrary to" clearly established Supreme Court law for the purposes § 2254(d)(1). *See Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (holding that state court is not required to cite Supreme Court cases, or even be aware of them, to avoid its decision being "contrary to" Supreme Court precedent). Moreover, the court's decision was not unreasonable. As *Brady* makes clear, an otherwise voluntary and intelligent guilty plea is not vulnerable to collateral attack simply because a defendant later discovers "his calculus misapprehended . . . the likely penalties attached to alternative courses of action." *Brady*, 397 U.S. at 757; *see Little v. Crawford*, 449 F.3d 1075, 1081 (9th Cir. 2006) (holding that petitioner's guilty plea was knowing and voluntary despite court's failure to advise him on the record that he was ineligible for probation). Because Jasso cannot surmount the barriers to relief imposed by § 2254(d), Ground One must be denied.

6

### B. Ground Two

In Ground Two, Jasso alleges that he was deprived of his constitutional right to effective assistance of counsel because his counsel did not have any type of psychosexual evaluation conducted on him before advising him to enter his guilty plea, despite the fact that he had no prior sex offenses in his criminal history. According to Jasso, counsel erroneously presumed that he would not be eligible for probation because either the post-2003 version of the statute governed his sentence or he would ultimately prove to be a "high risk" to re-offend. Jasso also argues that, under the pre-July 1, 2003, version of NRS § 200.366(b), a conviction for sexual assault on a minor with no substantial bodily harm could result in a lesser sentence of 5 to 20 years.

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and (2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). A habeas petitioner may attack the voluntary and intelligent character of a guilty plea by showing that he received ineffective assistance from counsel in connection with the entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). To demonstrate ineffective assistance of counsel in the context of a challenge to a guilty plea, a petitioner must show both that counsel's advice fell below an objective standard of reasonableness as well as a "reasonable probability" that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985) (holding that the two-part *Strickland* test applies to challenges to guilty pleas based on the ineffective assistance of counsel).

In Jasso's state post-conviction proceeding, the Nevada Supreme Court correctly identified the standards set forth in *Strickland* and *Hill v. Lockhart* as ones to apply to this claim. (Dkt. no. 20-3 at 75.) The court concluded that Jasso had failed to

7

demonstrate that he was prejudiced because "he received a tremendous benefit by entry of his guilty plea as he avoided forty-one additional counts in this case." . . . and he "failed to demonstrate a reasonable probability that he would not have pleaded guilty had trial counsel obtained a psychosexual evaluation . . ." *Id.* Here again, the state court's decision was not unreasonable. The claim relies on two untenable assumptions: (1) the State would have consented to a guilty plea agreement under which probation was a potential outcome and/or (2) there is a reasonable probability that Jasso would have risked going to trial on 42 felony counts had his counsel obtained a psychosexual evaluation. *See Hill*, 474 U.S. at 56 (finding no actual prejudice and declining to reach the question of whether counsel's erroneous advice regarding eligibility for parole under proffered plea bargain would satisfy the first prong of the *Strickland* test because the defendant failed to demonstrate that he would have pled differently but for the erroneous advice). The state court's decision is entitled to deference under § 2254(d). Thus, Ground Two must be denied.

C. **Ground Three**

In Ground Three, Jasso alleges that he was deprived of his constitutional right to effective assistance of trial and appellate counsel because neither counsel raised an issue as to Jasso being sentenced without a psychosexual evaluation or a presentence investigation report. Jasso contends he had a statutory right to both under NRS §§ 176.135(2) and 176.139. He further argues that the absence of a psychosexual evaluation deprived the court of jurisdiction to impose a sentence.

In Jasso's state post-conviction proceeding, the Nevada Supreme Court found that his claim regarding the lack of a presentence investigation report was "belied by record" because such a report was completed. (Dkt. no. 20-3 at 76.) As to the psychosexual evaluation, the court concluded that counsel did not perform deficiently because Jasso "agreed to a stipulated sentence of life in prison with the possibility of parole after ten years," which rendered such evaluation unnecessary. (*Id.*) Accordingly,

///

8

any objection to the lack of an evaluation "would have been futile," and "the issue did not have a reasonable probability of success on appeal." (*Id.*)

The record before this Court does not contain evidence, beyond the Nevada Supreme Court's finding, that a presentence investigation report was ever completed. Thus, this Court cannot determine whether that finding was reasonable for the purposes of § 2254(d)(2). Even if it was not, however, the ineffective assistance of trial counsel claim in Ground Three fails because, like Ground Two, it relies on faulty premises — i.e., that, had Jasso's counsel insisted upon a presentence investigation and psychosexual evaluation prior to sentencing, the State would have still been willing to extend a similarly favorable plea offer or, alternatively, there is a reasonable probability that Jasso would have risked going to trial on 42 felony counts.

Likewise, appellate counsel did not render ineffective assistance of counsel by not raising the issue on direct appeal. To begin with, the Nevada Supreme Court does not permit a defendant to challenge the validity of a guilty plea on direct appeal from the judgment of conviction. *See Bryant v. State*, 721 P.2d 364, 367-68 (Nev. 1986).[2] "Instead, a defendant must raise a challenge to the validity of his or her guilty plea in the district court in the first instance, either by bringing a motion to withdraw the guilty plea, or by initiating a post-conviction proceeding." *Id.* at 368. While appellate counsel could have conceivably challenged the sentence due to the lack of the presentence investigation or psychosexual evaluation, Jasso has not demonstrated a reasonable probability that the outcome of the proceeding would have been more favorable. Even in the unlikely event that the Nevada Supreme Court set aside his sentence, there is nothing in the record to suggest that Jasso would have received a lesser sentence on remand.

Ground Three is denied.

---

[2]The Nevada Supreme Court will, however, review on direct appeal the state district court's denial of a motion to withdraw plea. *Hart v. State*, 1 P.3d 969, 971 n.2 (2000) *overruled on other grounds by Harris v. State*, 329 P.3d 619 (2014).

9

### D. Ground Four

In Ground Four, Jasso alleges that he was deprived of his constitutional right to effective assistance of counsel because his counsel advised him to plead guilty without testing his case at a preliminary hearing or conducting an adequate investigation. He contends that, based on a review of counsel's file, it appears as if counsel's advice was based "purely upon reading the police reports in this case." (Dkt. 20-3 at 17.) In addition, Jasso faults counsel for failing to do any legal research or file any motions.

In Jasso's state post-conviction proceeding, the Nevada Supreme Court concluded that Jasso had not met either prong of the *Strickland* test with respect to this claim. (Dkt. no. 20-3 at 76.) The court noted that Jasso had not identified what motions counsel failed to file or demonstrated that he would have not pled guilty if counsel had conducted additional investigation. (*Id.*)

Courts have generally rejected claims of ineffective assistance premised on a failure to investigate where the record demonstrates that the defendant would have pled guilty despite the additional evidence and where the additional evidence was unlikely to change the outcome at trial. *See, e.g. Langford v. Day*, 110 F.3d 1380, 1388 (9th Cir. 1996) (denying claim of ineffective assistance of counsel on the ground that the record supported the state court's finding that even if the petitioner had been offered a defense psychiatrist, he would have pled guilty anyway); *Mitchell v. Scully*, 746 F.2d 951, 955 (2nd Cir. 1984) (*per curiam)* (finding no prejudice and guilty plea voluntary where counsel allegedly failed to inform defendant of affirmative defense that had little chance of success and entailed serious risks).

As respondents point out, there is evidence in the record that defense counsel retained an investigator and had designated witnesses and experts in preparation for trial. (Dkt. no. 20-1 at 71-78 (motion and order appointing investigator and approving expenses); *id.* at 91-95 (defendant's witness and expert witness list).) More fatal to Jasso's claim is that he offers only vague allegations as to areas that counsel failed to explore (*e.g.,* the charges against him arose only after victim's mother decided to

divorce him and the victim was sexually active with others (dkt. no. 20-3 at 18)) and fails to identify any specific evidence that a more vigorous investigation would have unearthed. *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice."); *Ceja v. Stewart*, 97 F.3d 1246, 1255 (9th Cir. 1996) (defendant "fail[ed] to explain what compelling evidence additional interviews would have unearthed or to explain how an investigation of aggravation evidence would have negated the evidence of the multiple gunshot wounds."); *Hendricks v. Calderon*, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account of what beneficial evidence investigation into any of these issues would have turned up, [defendant] cannot meet the prejudice prong of the *Strickland* test.").

In addition, Jasso also fails to explain how his defense would have benefitted from a preliminary hearing. Because the Nevada Supreme Court's denial of Ground Four was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, the claim must be denied.

For the reasons set forth above, Jasso's petition for habeas relief is denied.

**IV.   CONCLUSION**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable

///

jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Jasso's petition, the Court declines to issue a certificate of appealability for its resolution of any procedural issues or any of Jasso's habeas claims.

It is therefore ordered that petitioner's petition for writ of habeas corpus (dkt. no. 6) is denied. The Clerk shall enter judgment accordingly.

It is further ordered that a certificate of appealability is denied.

DATED THIS 23rd day of March 2015.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE